## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

ERIC LYNN,

       Petitioner,

v.                                Case No. 4:20-cv-229-MW-MJF

RICKY D. DIXON,[1]

       Respondent.

_____/

## ORDER and
## AMENDED REPORT AND RECOMMENDATION

Petitioner Eric Lynn has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 11. Lynn replied. Doc. 13. On February 25, 2022, the undersigned issued an Order and Report and Recommendation. Doc. 16. This Order and Amended Report and Recommendation is submitted following the discovery of a typographical error in the original Report and Recommendation. For the sake of clarity, the original Report and Recommendation is vacated, and this

---

[1] Ricky D. Dixon succeeded Mark S. Inch as Secretary of the Florida Department of Corrections, and is automatically substituted as the Respondent. Fed. R. Civ. P. 25(d).

Amended Report and Recommendation replaces the former in full. Although this Amended Report and Recommendation does not change the substantive analysis in any way, the parties will be given additional time, until March 14, 2022, to file objections to this Amended Report and Recommendation pursuant to 28 U.S.C. § 636(b). It remains the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, and that Lynn is not entitled to habeas relief.[2]

## I.    BACKGROUND FACTS AND PROCEDURAL HISTORY

This case involves Lynn's attempted second-degree murder of four victims (Michael Williams, Iranetta Williams, Kalvin Williams and Lester Meeks), and Lynn's subsequent tampering with Michael and/or Iranetta Williams's testimony.[3]

On April 1, 2010, Kalvin Williams and Lester Meeks were scheduled to meet with Lynn to pay money they owed for cocaine Lynn had fronted them. Lester had the money to pay his debt to Lynn, but Kalvin was short. The pair missed the

---

[2] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

[3] The background facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. *See Jackson v. Virginia*, 443 U.S. 307 (1979); *see also* Doc. 11, Exs. E-G (Trial Tr.).

scheduled meeting. Between 9:00-10:00 p.m., Kalvin asked his brother Michael Williams to drive him and Lester to a home on Palace Place in Leon County, Florida, where Kalvin hoped he could get more money.

Michael Williams and his wife Iranetta drove Kalvin and Lester to the home on Palace Place. Michael was driving his Chevrolet Suburban. Iranetta was seated in the passenger seat; Kalvin was in the rear driver-side seat; and Lester was in the rear passenger-side seat. After arriving at the home on Palace Place, two other cars pulled into the driveway behind the Williams's Suburban.

Lynn jumped out of one of the vehicles and approached Iranetta's window. Lynn was holding a handgun behind his back and asked: "Is Kalvin in the car?" Lynn then moved to the back window where Lester was sitting and opened Lester's door. Iranetta yelled, "gun," and ducked down onto Michael's lap. As Michael prepared to pull off, Lynn fired his gun into the Suburban. Lynn continued firing at the Suburban as Michael drove away. No one in the Suburban was injured. Michael asked Kalvin and Lester if they knew the man whom they had just encountered. Kalvin and Lester identified Lynn.

Michael drove directly to the Tallahassee Police Department ("TPD"). The TPD contacted the Leon County Sheriff's Department. Deputy Strickland responded

to the police station and met with the victims. Lester Meeks identified Lynn—by his full name—as the armed perpetrator. Kalvin identified Lynn by his first name.

The next day, hoping to remove themselves from the conflict, Michael and Iranetta Williams stopped by Lynn's mother's home. Iranetta asked Lynn's mother to tell her son Eric to come see her. The next day, Eric Lynn showed up at Michael and Iranetta Williams's home with his girlfriend. Michael described the visit:

> When we stopped and talked to his mother—well, basically my wife talked with her, but my wife invited [Eric Lynn] to the house and so the next day after she talked with his . . . mom, [Eric Lynn] came to the house about twelve o'clock that night.
>
> . . . .
>
> Well, him and his girlfriend came to the house I invited them in, asked them to have a seat, and when he sat down, I said, . . . do we have to worry about this going on again? You know what I'm saying, running up on my truck or anything like that there? I said, because my main concern is my kids. And I showed him a picture of my daughter.
>
> At that time, my wife come out of the back and she asked, is this them, and I was like, yeah. And so then my wife went to talking with Eric and everything. And Eric [said], I just want to put everything behind us, just let everything go, tell your brother that we'll just forget everything. We'll just drop it. . . .
>
> . . . .
>
> [Lynn] said, "it didn't go down the way I had planned for it to go." He said, "I was just trying to scare your brother." He said, "when you pulled off, I fell and the gun went off." And he said, "I just wanted to know when I go to my probation officer . . . will you all say you all recognized me? Do I need to run or what do I need to do?" He said, "I

just want you all to say you all—that 'I didn't see his'—that 'we didn't see his face.'"

Ex. E at 28-29 (quotation marks added).[4]

Iranetta Williams testified:

He [Lynn] was trying to say that he didn't mean to do it, you know. He was trying to say, you know, he will do whatever needs to be done to have the situation taken care of. I guess, the vehicle, the holes in the vehicle, but that was it, you know.

Q [Prosecutor]    Did this person admit to you that he shot at your vehicle?

A [Ms. Williams]  Admitting it, saying that he did it, I'm not sure if he said, I'm the one that shot your car, no. But he did say he did not mean to do it.

. . . .

. . . What he told us was that he went to open the door and when the car pulled off, he leaned back. He said that's when he lost control of the gun and it went to shooting. So, that's what was said and that was behind the statement that he did not mean to do it.

. . . .

. . . I believe he said something of the nature of saying that, you know, don't say he was there, or – and I told him we have already made a report and it's just going to have to go from there.

---

[4] Citations to the state-court record are to the electronically-filed exhibits attached to the State's answer. Doc. 11. The court cites the lettered exhibit followed by the page number appearing on the original document. If a page of a document bears more than one page number, the court cites the Bates stamp number appearing at the bottom right corner of the page.

Ex. E at 58-60.

Deputies recovered one projectile from the back passenger floorboard of the Suburban, and five handgun cartridge casings from the scene at Palace Place. There were two bullet holes in the rear passenger door of the Suburban.

Kalvin Williams and Lester Meeks identified Lynn in court as their drug dealer who approached Michael's Suburban with a gun, demanded to know if Kalvin was inside, and opened Lester's door just prior to shots firing. Iranetta Williams identified Lynn in court as the man who came to her home and admitted to shooting at the car but claimed it was accidental. Michael Williams was unable to visually identify Lynn in court as the shooter or as the man who came to his home, purportedly due to the passage of time and changes in Lynn's appearance. Michael Williams did testify, however, that he knew that the man who came to his home was named "Eric Lynn."

In Leon County Circuit Court Case No. 2010-CF-1041, Lynn was charged with four counts of Attempted Second Degree Murder (Counts I-IV); Possession of a Firearm by a Convicted Felon (Count V); and Tampering with a Witness (Count VI). Ex. A at 41-42. Lynn was tried on November 7-8, 2012. Exs. E-G (Trial Tr.).

The jury found Lynn guilty of all counts as charged. Ex. A at 148-57 (Verdict). The jury made additional specific findings on Counts I-IV that Lynn actually possessed and discharged a firearm. *Id*. at 148-54.

The trial court adjudicated Lynn guilty of all counts and sentenced him on Counts I, II, III and IV to concurrent terms of 30 years of imprisonment with a 20-year mandatory minimum. Ex. H at 310-20 (Am. J. & Sentence). The court sentenced Lynn on Count V to a 15-year term of probation to run consecutive to the sentence on Counts I-IV. *Id*. The court sentenced Lynn on Count VI to a 5-year term of probation to run concurrent with the sentence on Count V. *Id*. The Florida First District Court of Appeal ("First DCA") affirmed the judgment *per curiam* and without written opinion. *Lynn v. State*, 134 So. 3d 456 (Fla. 1st DCA 2014) (Table) (copy at Ex. K).

On August 7, 2014, Lynn filed a *pro se* petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel. Ex. N. The First DCA denied the petition "on the merits," without explanation. *Lynn v. State*, 159 So. 3d 869 (Fla. 1st DCA 2015) (copy at Ex. Q).

On September 23, 2015, Lynn filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). Ex. S. The state circuit court summarily denied the motion. *Id*. Lynn did not appeal.

Page 7 of 35

On January 27, 2016, Lynn filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. Ex. T at 91-148 (Second Am. Mot. for Postconviction Relief). The state circuit court set the matter for an evidentiary hearing.

After an evidentiary hearing where Lynn was assisted by counsel, the circuit court denied relief on all claims. Ex. T at 197-269 (Evidentiary Hr'g Tr.); Ex. T at 176-77 (Order). The First DCA affirmed in a detailed published opinion. *Lynn v. State*, 286 So. 3d 357 (Fla. 1st DCA 2019) (copy at Ex. BB). The Florida Supreme Court denied review on April 6, 2020. *Lynn v. State*, No. SC19-2001, 2020 WL 1673710 (Fla. 2020) (copy at Ex. FF).

Lynn filed his *pro se* federal habeas petition on April 27, 2020. Doc. 1. The petition raises four claims of ineffective assistance of trial counsel. *Id*. The parties agree that Lynn presented all of his claims to the state courts in his Rule 3.850 proceeding and appeal. Doc. 1; Doc. 11. The State asserts that Lynn is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. Doc. 11.

## II.    RELEVANT LEGAL PRINCIPLES

### A.    Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[5] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's

---

[5] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's

ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the

state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## B.    Federal Law Governing Claims of Ineffective Assistance of Counsel

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable

Page 12 of 35

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting

*Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371

(2010). "Establishing that a state court's application of *Strickland* was unreasonable

under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations

omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III.   DISCUSSION

**Ground One**      **"Ineffective Assistance of Trial Counsel under Amendment 6th, 5th and 14th, United States Constitution, Failed to Object When the Trial Court Preemptively Instructed the Jury of a 'Blanket Policy" Prohibiting Reviewing Transcripts" Doc. 1 at 5.**

Lynn claims that trial counsel was ineffective for failing to object to the trial

court's response to a jury question. Lynn alleges:

> Defense counsel's performance was deficient when failing to object to the trial court's answering the jury's question outside the presence of counsel and failed to object when the court did not advise the jury that a read back of portions of testimony was possible.

Doc. 1 at 5. Lynn's reply explains that this claim involves counsel's failure to object "when the trial court preemptively instructed the jury of a 'blanket policy prohibiting' reviewing trial transcripts and not advising jury of the availability of 'read back' portions of trial testimony." Doc. 13 at 2.

## A.    State Court's Decision

Lynn presented this claim to the state circuit court as the second claim of his second amended Rule 3.850 motion. Ex. T at 98-104. The state circuit court denied relief. *Id*. at 258-60. Lynn presented the issue in his counseled postconviction appeal. Ex. W at 18-22. The First DCA affirmed.

The First DCA identified the two-pronged *Strickland* standard as the legal standard controlling Lynn's ineffective-assistance claims. *Lynn*, 286 So. 3d at 359 (copy at Ex. BB at 2). The court denied relief on this claim for the following reasons:

> Lynn asserts that defense counsel was ineffective for failing to object to the trial court's instruction to the jury that transcripts would not be provided during its deliberations. Lynn contends that the jury would have understood the court's answer to mean that any read-back of the testimony would be prohibited. He argues that it was per se reversible error to instruct a jury that it cannot have testimony read back. But Lynn's argument misrepresents what occurred at trial.

> At the end of closing argument, the trial court asked the jurors to confer amongst themselves and decide whether they wanted to start deliberations that night or wait until the following morning. Before deciding, the jury asked if transcripts would be available in the morning. The court answered the question in the negative. The jury chose to begin deliberations the following morning.

> The trial court's response to the jury was correct. Transcripts are not permitted in the jury room. *Hazuri v. State*, 91 So. 3d 836, 841 (Fla. 2012). If a jury asks for transcripts during deliberations, the court must deny the request and inform the jury of the possibility of a read-back. Here, such an instruction would have been premature because the jury had not started its deliberations. It was merely weighing the pros and cons of continuing that night or returning in the morning. The jury never asked for transcripts or read-backs during its actual deliberations. Because Lynn failed to demonstrate that counsel had a legally sound objection to the court's response to the jury's question, this claim lacks merit. *Lukehart v. State*, 70 So. 3d 503, 513 (Fla. 2011) ("Counsel cannot be deemed ineffective for failing to pursue a meritless claim.").

*Lynn*, 286 So. 3d at 360 (copy at Ex. BB at 3).

## B.    Lynn's Claim Does Not Warrant Habeas Relief

The state court's decision is not "contrary to" clearly established federal law, because the state court identified and applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Lynn must show that the state court's decision involved an unreasonable application of the *Strickland* standard, or that it was based on an unreasonable determination of the facts in light of the evidence in the state-court record.

This court defers to the state court's findings of fact, because they are amply supported by the trial transcript, Ex. F at 315-21, and because Lynn has not rebutted them with clear and convincing evidence to the contrary. *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("AEDPA affords a presumption of

correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)).

Lynn's claim that the state court unreasonably applied *Strickland* obviously depends upon this court determining that trial counsel's performance was deficient, but first this court would have to conclude that the First DCA misinterpreted state law. In *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338 (11th Cir. 2005), the Eleventh Circuit addressed a similar circumstance. Petitioner Herring argued that his trial counsel was ineffective for failing to make an objection, based on state law, to the introduction of evidence at the penalty phase of his trial. The state court concluded that Herring's proposed objection would have been overruled and, therefore, counsel was not deficient. *Herring*, 397 F.3d at 1354-55. The Eleventh Circuit held: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [Herring's counsel] done what Herring argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Id*. (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir.1997)).

Here, as in *Herring*, the state court already has answered the question of what would have happened had counsel made Lynn's proposed state-law objection—the objection would have been overruled. Because this court will not "second guess" the state court's conclusion that the trial court's response to the jury was correct under state law, Lynn cannot demonstrate that counsel was deficient for failing to object or that he was prejudiced by the lack of an objection. *See Herring* at 1355; *see also Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained."); *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."); *Green v. Georgia*, 882 F.3d 978, 987 (11th Cir. 2018) (holding that the petitioner could not possibly have suffered *Strickland* prejudice where the objection that was not made would have been futile).

The state court's rejection of Lynn's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Lynn is not entitled to habeas relief on Ground One.

**Ground Two**    **"Ineffective Assistance of Trial Counsel under Amendment 6th, 5th and 14th, United States Constitution, Suppression of Identifications" Doc. 1 at 7.**

Lynn claims that trial counsel was ineffective for failing to move to suppress testimony of identification. Lynn explains:

> [Lynn's] counsel should have moved to suppress indentifications [sic] upon discovering that the procedure tainted the reliability of the identifications when all four of the alleged victims were collectively allowed to select Defendant as the culprit from a single booking photo of Defendant.

Doc. 1 at 7. The subject of Lynn's claim is that when the victims were at the police department reporting the shooting, Deputy Strickland pulled up a prior booking photo of Lynn on a computer in his patrol car and, according to Lynn, showed it to all of the victims together at once. *See* Doc. 13 at 6, 8.

**A.    State Court's Decision**

Lynn presented this claim to the state circuit court as the fifth claim of his second amended Rule 3.850 motion. Ex. T at 109-14. The state circuit court denied relief. *Id*. at 261. Lynn presented the issue in his counseled postconviction appeal. Ex. W at 23-31. The First DCA affirmed.

The First DCA denied relief for the following reasons:

> Lynn next asserts that counsel was ineffective for failing to suppress out-of-court identifications obtained by the police after all four alleged victims were shown a single booking photograph of Lynn.

He argues that this type of identification procedure created a substantial risk of misidentification.

Lynn is correct that the use of a single photograph is an impermissibly suggestive identification procedure. *Gillis v. State*, 930 So. 2d 802, 804 (Fla. 3d DCA 2006). Even so, the identification need not be suppressed when the witness's familiarity with the defendant provides an independent basis for identification because there is no substantial likelihood of irreparable misidentification. *Fitzpatrick v. State*, 900 So. 2d 495, 518 (Fla. 2005) (finding that, while the use of a single photograph for identification was unduly suggestive, the witness had ample opportunity to observe the defendant closely, which served as an independent basis for identification, uninfluenced by the suggestive procedure); *Washington v. State*, 653 So. 2d 362, 365 (Fla. 1994) (finding that, while the use of a single photograph to obtain an identification was unduly suggestive, the witness's familiarity with the defendant provided an independent basis for identification, uninfluenced by the suggestive procedure).

The trial court properly determined that counsel had no basis to challenge Lynn's identification because the witnesses had an independent basis for their identification—they had previously purchased drugs from Lynn. In fact, Lynn's defense was that the victims owed him money for drugs and that they were accusing him of committing this crime to avoid paying their debt. Because Lynn cannot establish that there was a reasonable probability that a motion to suppress would have been granted, the trial court properly denied this claim. *Spencer*, 842 So. 2d at 61.

*Lynn*, 286 So. 3d at 360 (copy at Ex. BB at 3-4) (last citation to *Spencer v. State*, 842 So. 2d 52 (Fla. 2003)).

## B.    Lynn's Claim Does Not Warrant Habeas Relief

The state court's decision is not "contrary to" clearly established federal law, because the state court identified and applied the two-part *Strickland* standard. *See*

*Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Lynn must show that the state court's application of the *Strickland* standard was unreasonable, or that the decision was based on an unreasonable determination of the facts in light of the evidence in the state-court record.

Lynn has not shown that the state court's decision involved an unreasonable application of *Strickland*. Lynn's theory of his ineffective assistance claim rests on the assumption that his proposed motion to suppress was viable. The state court reasonably determined that Lynn's assumption was faulty.

In *Sexton v. Beaudreaux*, 585 U.S. ___, 138 S. Ct. 2555 (2018), the Supreme Court reiterated that "due process concerns arise only when law enforcement officers used an identification procedure that is both suggestive and unnecessary." *Sexton*, 138 S. Ct. at 2559 (quoting *Perry v. New Hampshire*, 565 U.S. 228, 238 (2012)) (other citations omitted). "To be impermissibly suggestive, the procedure must give rise to a very substantial likelihood of irreparable misidentification." *Sexton*, 138 S. Ct. at 2559 (internal quotation marks and citations omitted). "Even when an unnecessarily suggestive procedure was used, 'suppression of the resulting identification is not the inevitable consequence.'" *Sexton*, 138 S. Ct. at 2559 (quoting *Perry*, 565 U.S. at 239). "Instead, the Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created a substantial

likelihood of misidentification." *Sexton*, 138 S. Ct. at 2559 (internal quotation marks and citation omitted). "Reliability of the eyewitness identification is the linchpin' of that evaluation." *Sexton*, 138 S. Ct. at 2559 (quoting *Perry*, 565 U.S. at 239). "The factors affecting reliability include 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" *Sexton*, 138 S. Ct. at 2559 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)).

The state court found that two of the victims (Kalvin Williams and Lester Meeks) knew Lynn independently, prior to the incident, because each had conducted recent drug deals with him. This court defers to that factual finding, because it is amply supported by the trial transcript and because Lynn has not rebutted it with clear and convincing evidence to the contrary. *Consalvo*, 664 F.3d at 845; *see also* Ex. E at 79, 83-84, 86-88, 99 (Kalvin Williams Test.); *Id.* at 111-12, 114-15, 117, 119, 122. (Meeks Test.).

Based on the state court's finding and the totality of the evidence, a fairminded jurist could agree with the state court's determination that Kalvin Williams's and Lester Meeks's familiarity with Lynn served as an independent basis for their identifications, uninfluenced by the suggestive photo procedure. Notably, the reason

Deputy Strickland pulled up the photo of Lynn on his computer was because Meeks and/or Kalvin Williams identified Lynn by name as the perpetrator. Ex. E at 86, 94-95 (Kalvin Williams Test.); *Id.* at 117 (Meeks Test.); Ex. F at 139-40, 145 (Strickland Test.); Ex. E at 55-56 (Iranetta Williams Test.).

Additionally, Kalvin Williams testified that after Meeks gave Deputy Strickland Lynn's full name and Strickland pulled up the photo, Kalvin was not sure if the man in the photo was the same "Eric" as his drug dealer who shot at the Suburban, because Lynn looked different in the photo. Ex. E at 86. Thus, Kalvin's exposure to the photo did not influence his identification of Lynn as the perpetrator. It was Kalvin's own prior in-person meetings with Lynn that caused him to recognize Lynn as the perpetrator both at the time of the incident and in court. *Id.* at 79, 83-84, 86-89, 95-96, 99-101 (Williams Test.).

On this record, the state court reasonably concluded that Lynn's proposed motion to suppress Lester Meeks's and Kalvin Williams's identifications was not viable, because their pre-existing familiarity with Lynn's voice and appearance—not their exposure to Strickland's photo of Lynn—was the basis for their identifications of Lynn as the perpetrator. *See Coleman v Alabama*, 399 U.S. 1, 5-6 (1970) (holding that in-court identification was admissible because it was "entirely based upon observations at the time of the assault and not at all induced by the

conduct of the lineup;" specifically, the identifying witness testified that he had a fleeting but "real good look" at his assailant at the time of the assault, and he identified the assailant among the participants in the lineup *before* the police placed the participants in a formal line).

The trial transcript additionally establishes that Iranetta Williams was *not* exposed to the photograph Strickland pulled up on his computer, as she was inside the police station when the photo identification occurred. Ex. E at 65-66 (Iranetta Williams Test.); Ex. F at 146 (Strickland Test.). Ms. Williams's in-court identification of Lynn was based on Lynn being the same man who came to her home and admitted to shooting into the Suburban, albeit characterizing it as unintentional. Ex. E at 56-62, 66, 68, 70, 73-74 (Williams Test.). Thus, a motion to suppress based on the photo procedure would not have resulted in the exclusion of Ms. Williams's identification testimony.

At trial, Michael Williams disavowed his out-of-court photo identification of Lynn at the police station, explaining that he "just went along with" Kalvin's and Lester's identifications. Ex. E at 58. Michael Williams was unable to visually identify Lynn in court as the man who approached his Suburban. He likewise was unable to visually identify Lynn in court as the man who came to his home. *Id*. at 27-29, 32-34, 36, 49 (Williams Test.). Mr. Williams testified that he knew the man

Page 24 of 35

who came to his home to be "Eric Lynn" because his wife asked Eric Lynn's mother to have Eric stop by, and the man who visited them the next day identified himself as "Eric." *Id*. at 27-29, 34, 48-49.

For all of the foregoing reasons, a fairminded jurist could agree with the state court's conclusion that the victims' identifications of Lynn were not induced by the photo identification procedure, but instead, were entirely independent of it. Because Lynn failed to show that the photo identification "g[a]ve rise to a very substantial likelihood of irreparable misidentification." *Sexton*, 138 S. Ct. at 2559, he failed to establish that counsel's failure to file a motion to suppress was ineffective assistance.

The state court's rejection of Lynn's claim was consistent with clearly established federal law, and was based on a reasonable determination of the facts. Lynn is not entitled to federal habeas relief on Ground Two.

**Ground Three**      **"Ineffective Assistance of Trial Counsel Amendment 6th, 5th and 14th, United States Constitution, Closing Argument" Doc. 1 at 8.**

Lynn claims that trial counsel was ineffective for failing to object to the prosecutor's closing argument. Doc. 1 at 8. In particular, Lynn alleges that the prosecutor "improperly misrepresented that Defendant confessed to the crime." Ex. T at 114 (Second Am. Mot. for Postconviction Relief). Lynn states:

> Appellant [Lynn] cited the testimony of two witnesses who both expressly denied that Appellant made such statements. Appellant

Page 25 of 35

claimed that he was prejudiced by counsel's deficiency because her failure to object permitted the prosecutor to mislead the jury into believing Appellant confessed as for the prosecutor's claims in closing argument.

Doc. 1 at 8.

The closing argument at issue are these statements by the prosecutor:

Michael Williams, Iranetta Williams, sat here today and told you what happened to them. And they were honest and said, I couldn't identify him that night. I don't know who shot. They were honest and told you that. They said, I – it was so dark out there, I don't know who it was.

But they know who it was because that individual came to the house a couple of days later and said, I'm sorry. I'm sorry I shot your car. That's not the way I meant for it to go down. I just wanted to scare Kalvin, because he owed me some money. I'll pay for the damage. Please don't tell my federal probation officer that I was there.

Ex. F at 282-83 (Trial Tr.). Later, the prosecutor argued: "So the testimony of Iranetta and Michael also provide for you testimony and evidence that is – goes to show that Eric Lynn was there. He was there. He admitted to it." Ex. F at 309; *see also* Ex. T at 115 (Second Am. Mot. for Postconviction Relief (quoting these arguments)).

## A.    State Court's Decision

Lynn presented this claim to the state circuit court as the sixth claim of his second amended Rule 3.850 motion. Ex. T at 114-117. The circuit court denied

relief. *Id*. at 262. Lynn presented the issue in his counseled postconviction appeal.

Ex. W at 31-34. The First DCA affirmed.

> The First DCA denied relief for the following reasons:
>
> > Lynn argues that counsel was ineffective for failing to object to the prosecutor implying during closing arguments that Lynn confessed to the crime. He points to the portion of closing argument where the prosecutor stated that Lynn "came to the house a couple of days later and said, I'm sorry, I'm sorry I shot your car." Lynn contends that no evidence at trial supported this statement.
> >
> > This claim is conclusively refuted by the record. Two witnesses testified that Lynn came to their home after the shooting to explain that the shooting did not go as he planned. The witnesses testified that Lynn said that he did not mean to shoot their car and he offered to pay for the repairs. Because the prosecutor's argument was a fair comment on the evidence, defense counsel had no grounds for an objection. *Spann v. State*, 985 So. 2d 1059, 1068 (Fla. 2008) ("Because the prosecutor was making a fair comment on the evidence presented at trial, counsel cannot be deemed ineffective for failing to object.").

*Lynn*, 286 So. 3d at 360-61 (copy at Ex. BB at 4).

### B.    Lynn's Claim Does Not Warrant Habeas Relief

The state court identified and applied the two-part *Strickland* standard. *Lynn*, 286 So. 3d at 359 (copy at Ex. BB at 2). To obtain habeas relief, therefore, Lynn must show that the state court's application of the *Strickland* standard was unreasonable.

In reviewing the state court's decision, this court defers to the state court's factual findings, because they are amply supported by the trial transcript and because

Lynn has not rebutted them with clear and convincing evidence to the contrary. *Consalvo*, 664 F.3d at 845; *see also* Ex. E at 28-29, 32-34 (Michael Williams Test.); *Id*. at 57-59, 60-61 (Iranetta Williams Test.). The relevant testimony of Michael and Iranetta Williams is quoted above. *See* discussion, *supra*, Part I.

Given Michael and Iranetta Williams's testimony, fairminded jurists could concur in the state court's conclusion that the prosecutor was advocating for a conclusion that reasonably could be reached from their testimony, and that an objection would have been futile. Lynn, therefore, cannot not establish that counsel's performance was deficient or prejudicial. *See Meders*, 911 F.3d at 1354; *see also Pinkney*, 876 F.3d at 1297; *Green*, 882 F.3d at 987; *Stephens v. Sec'y, Fla. Dep't of Corr*., 678 F.3d 1219, 1227 (11th Cir. 2012) (rejecting ineffective-assistance claim where prosecutor's comments were not improper).

The state court had a reasonable basis to deny Lynn's claim. Lynn is not entitled to habeas relief on Ground Three.

**<u>Ground Four</u>**        **<u>"Counsel Provided Ineffective Assistance As Guaranteed By The Sixth and Fourteenth Amendments By Failing to Call A Physician Drug Expert Witness." Doc. 1 at 10.</u>**

Lynn alleges that trial counsel was ineffective for "fail[ing] to consult with, and call to testify, an expert witness on the effects of drugs upon an eyewitness' identification." Doc. 1 at 10. Neither Lynn's petition, nor his reply, enlightens this

court as to which witness's identification his claim involves. In state court, Lynn

discussed the identification testimony of Kalvin Williams and Lester Meeks, as well

as Meeks's testimony that he saw Lynn holding a gun behind his back when Lynn

was standing at Iranetta Williams's window. *See* Ex. T at 123-27 (Second Am. Mot.

for Postconviction Relief). Lynn faulted trial counsel for failing to call an expert

witness "to testify [about] the effects o[n] an individual who has consumed a

substantial quantity of alcohol and crack cocaine." *Id*. at 123.

## A.    State Court's Decision

Lynn presented this claim to the state circuit court as the ninth claim of his

second amended Rule 3.850 motion. Ex. T at 123-27. The circuit court denied relief.

*Id*. at 263-64. Lynn presented the issue in his counseled postconviction appeal. Ex.

W at 35-41. The First DCA affirmed.

The First DCA denied relief for the following reasons:

> Next, Lynn argues that counsel was ineffective for failing to call
> an expert witness to testify about how crack cocaine may affect a user's
> perceptions. He asserted that the only witness who testified that he had
> a gun that night had been using crack cocaine before the shooting. The
> trial court properly denied this claim for three reasons. First, there was
> no testimony that the witness consumed crack cocaine before the
> shooting. Second, defense counsel testified at the evidentiary hearing
> that Lynn never asked her to retain such an expert and that she did not
> believe that his family would have been able to pay for an expert. Third,
> Lynn stated on the record that his counsel had called all the witnesses
> he wanted to call. Lynn cannot now go behind his sworn statements.
> *Kelley v. State*, 109 So. 3d 811, 813 (Fla. 1st DCA 2013).

*Lynn*, 286 So. 3d at 361 (copy at Ex. BB at 5).

### B.    Lynn's Claim Does Not Warrant Habeas Relief

The state court identified and applied the two-part *Strickland* standard. *Lynn*, 286 So. 3d at 359 (copy at Ex. BB at 2). To obtain habeas relief, therefore, Lynn must show that the state court's application of the *Strickland* standard was unreasonable.

This court defers to the state court's factual findings, because they are amply supported by the trial transcript and because Lynn has not rebutted them with clear and convincing evidence to the contrary. At trial, there was general testimony that Kalvin Williams and Lester Meeks had a drug problem. Ex. E at 35-36, 40 (Michael Williams Test.); *Id*. at 66 (Iranetta Williams Test.); *Id*. at 79 (Kalvin Williams Test.); *Id*. at 66-67, 97, 111-12 (Meeks Test.). In addition, both Williams and Meeks testified that they had consumed crack cocaine earlier during the day of the incident. Ex. E at 97, 126. There was no testimony, however, that either of them had consumed drugs or alcohol near the time of the incident, which was in the evening between 9:00-10:00 p.m.. Ex. E at 67.

Lynn's suggestion to the state court—that Williams and Meeks might have "consumed a substantial quantity of alcohol and crack cocaine prior to the shooting"—was pure speculation. There was no such evidence at trial or at the

Page 30 of 35

postconviction evidentiary hearing. Lynn's evidentiary hearing testimony that Meeks and Williams used crack cocaine "the night of the incident," was not based on personal knowledge, as he was not with the men prior to the shooting. Ex. T at 212. Lynn also made no showing, much less a sufficient one, that there was a reasonable probability the result of his trial would have been different had counsel hired a drug expert.

A petitioner's burden under *Strickland* "is particularly heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." *McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021) (internal quotation marks omitted) (quoting *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006)). For that reason, the Eleventh Circuit has held that "a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." *McKiver*, 991 F.3d at 1365.

The state court reasonably concluded that Lynn's unsupported allegation of substance intoxication was insufficient to establish a *Strickland* violation. Lynn's speculation and conclusory argument are precisely the kind of uncalled-witness claims that courts uniformly reject. *See McKiver*, 991 F.3d at 1365-67; *see also*

*Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (noting that the petitioner offered "only speculation that the missing witnesses would have been helpful," which is insufficient to meet the petitioner's burden of establishing a *Strickland* violation); *Wilson v. Sec'y, Fla. Dep't of Corr.*, 769 F. App'x 825, 827 (11th Cir. 2019) (rejecting as conclusory petitioner's claim that counsel was ineffective for failing to hire a second medical expert; "[I]neffective assistance of counsel cannot be proven via conclusory assertion—*see, e.g., Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012)—but that is all Wilson offered."); *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.").

The state court's rejection of Lynn's claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Lynn is not entitled to habeas relief on Ground Four.

## IV.   CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.    CONCLUSION

It is **ORDERED** that:

1.    The original Order and Report and Recommendation, Doc. 16, is **VACATED**, and this Order and Amended Report and Recommendation replaces the former in full.

2.  The clerk of court shall change the docket to reflect that Ricky D. Dixon has been substituted as the Respondent in this action.

In addition, for the reasons set forth above the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus, Doc. 1, challenging the judgment of conviction and sentence in *State of Florida v. Eric K. Lynn*, Leon County Circuit Court Case No. 2010-CF-1041, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this <u>28th</u> day of February, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate**

**judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**